23 C.C.P.A.(Patents)

## AXTON–FISHER TOBACCO CO. v. FORTUNE TOBACCO CO.*

### Patent Appeal No. 3572.

Court of Customs and Patent Appeals.
March 23, 1936.

LENROOT, Associate Judge, dissenting.

*Rehearing denied April 20, 1936.

Martin T. Manion, of Wheeling, W. Va. (Royce A. Ruess and Charles R. Allen, both of Washington, D. C., and Ernest Woodward, of Louisville, Ky., of counsel), for appellant.

Kenyon & Kenyon, of New York City (Douglas H. Kenyon, Robert N. Kenyon, and Lee B. Kenyon, all of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents reversing the decision of the Examiner of Trade-Mark Interferences dismissing appellee's notice of opposition and holding that appellant was entitled to the registration of the trade-mark "Twenty Grand," for use on cigarettes.

In its application, appellant stated that it had used its trade-mark on its goods since April 25, 1931.

In its notice of opposition, appellee alleged that it had used a composite mark, consisting of the words "Twenty Grand" and a pictorial representation of the head of a famous race horse bearing that name, on cigarettes since February 3, 1932; that it had popularized its mark and its goods; that appellant "made no trade mark use of the notation 'Twenty Grand' on cigarettes prior to the adoption and use by the opposer of said notation 'Twenty Grand' and/or '20 Grand' as a part of its composite mark or if any use was made prior to the use of the opposer it was so transitory, spasmodic and inconsiderable as not to vest title in its user as against the opposer"; that appellant's right to the use of the notation "Twenty Grand" on cigarettes was abandoned "through non-user"; that the trade-marks of the respective parties are confusingly similar; and that the registration by appellant of the trade-mark "Twenty Grand" would injure appellee.

In its answer, appellant denied that appellee had used its composite trade-mark prior to appellant's use of its trade-mark "Twenty Grand"; that appellee had expended large sums of money in advertising its trade-mark, and would be damaged by appellant's registration of its mark; and that appellant had abandoned its mark. Appellant alleged that it had popularized its cigarettes under the trade-mark "Twenty Grand," and that the purchasing public generally associated it with appellant's goods. Appellant admitted, however, that the concurrent use by the parties of the trade-marks here involved would cause confusion in the trade.

The sole issue in the case, in view of the fact that appellee did not adopt or use its composite trade-mark on cigarettes until approximately nine months after appellant's adoption and use of its mark, is whether appellant's prior use amounts, in law, to a trade-mark use. If it does, appellant is the prior user and is entitled to the registration of its trade-mark. If it does not, we must then inquire as to the nature and character of appellee's use of its trade-mark from February to June 8, 1932, on which latter date, and subsequent thereto, it is conceded by counsel for appellee, appellant made a trade-mark use of the term "Twenty Grand."

It appears from the record that appellant manufactures cigarettes and sells them at wholesale, and, to some extent, at retail; that for some time prior to its adoption and use of the trade-mark "Twenty Grand" it manufactured and sold three brands of cigarettes, namely, "Spud," "Clown," and "Commander"; that the "Spud" and "Clown" brands were sold in the United States; that, due to the fact that appellant did not have the right to use the trade-mark "Commander" in this country, the cigarettes bearing that mark were sold only for export; and that the trade-mark "Twenty Grand" was first suggested to the president of the appellant company, the witness Wood F. Axton, in October, 1930, from whose testimony we quote:

"* * * I asked Mr. Wrege [assistant to the secretary and treasurer and export manager of appellant] to have the brand registered with the Tobacco Mer-

chants Association, which meant to investigate whether there was any brand of this kind on the market, or not, as they keep very good records of all tobaccos registered in the Patent Office, and in use whether they are registered there, or not, and sometime later on I asked him had he registered this brand with the Patent Office. He told me that he had not but intended to do it, and I said 'Get these cigarettes on the market—get some out and register them with the Patent Office'; and in April, 1931, he registered them with the Patent Office, and we began to make them at that time, or before he registered them with the Patent Office.

"Q. 14. Then you adopted the name 'Twenty Grand' about October, 1930? A. We adopted it.

"Q. 15. And you instructed the manufacture of 'Twenty Grand' cigarettes about April, 1931, is that correct? A. We began to manufacture them in April, 1931."

At the top of appellant's certificate of registration—Exhibit B—issued October 22, 1930, for use of its trade-mark "Twenty Grand" appears the following: "United Registration Bureau of the Tobacco Industries affiliated with the Tobacco Merchants Association of the United States," New York.

It further appears from Exhibit B that trade-mark records were kept by that concern for registration purposes.

The witness Axton stated that it was customary in the tobacco trade to have the Tobacco Merchants Association make a search of its records in order to determine whether a proposed trade-mark was being used by others engaged in that business, and that the registration of the mark with that concern was for the purpose of giving notice to others that the registrant intended to use the registered trade-mark; that the Tobacco Merchants Association had been in business for about twenty years, and it had been the policy of appellant to register its marks with that concern.

It appears from the record that on or about April 10, 1931, appellant ordered labels bearing the trade-mark "Twenty Grand"; that those labels were received by it on April 15 of that year; that the trade-mark was first placed upon a complete package of cigarettes on April 22, 1931; that the first interstate sale, con-

sisting of one package containing twenty cigarettes, was made under the trade-mark "Twenty Grand" to Frank P. Clipp of New Albany, Ind., on April 25, 1931; that, thereafter, the following sales were made in interstate commerce under the trade-mark "Twenty Grand": May 13, 1931, one carton containing ten packages of twenty cigarettes each to Frank P. P. Clipp; June 27, 1931, one carton to Raymond C. Ellis; August 6, 1931, one to Raymond C. Ellis; August 6, 1931, one carton to George A. Stephens; August 24, 1931, one carton to Raymond C. Ellis; September 11, 1931, one carton to George A. Stephens; December 29, 1931, one carton to Raymond C. Ellis; January 4, 1932, one carton to George A. Stephens; January 25, 1932, one carton to Frank P. Clipp; February 10, 1932, five cartons to Raymond C. Ellis; April 21, 1932, eight packages containing twenty cigarettes each to George A. Stephens, and one carton to Frank P. Clipp.

All of those sales were recorded in the books of appellant.

It further appears from the record that on or about May 6, 1932, drawings were made for a new label for appellant's "Twenty Grand" cigarettes, known as the "brown label"; that wrappers and cartons bearing the new label were ordered by appellant, and were delivered to it on June 2, 1932; that on June 8 of that year it sold large quantities of cigarettes bearing the "brown label," under the trade-mark "Twenty Grand," in interstate commerce.

It is contended by counsel for appellee that prior to June 8, 1932, appellant neither displayed nor advertised its so-called "Twenty Grand" cigarettes; that, in order to prevent others engaged in the tobacco trade knowing of its use of the trade-mark "Twenty Grand," all of appellant's sales prior to that time were made secretly to friends of the officials of the company, who were not connected with the tobacco trade; and that such sales were wholly insufficient to establish a trade-mark use of the term "Twenty Grand."

It clearly appears from the record that appellant's first use of the trade-mark "Twenty Grand," in April, 1931, was on a cigarette of substantially the same blend as its "Commander"; that, at that time and for a year thereafter, appellant sought to produce a blend of tobaccos for a cig-

arette that would be pleasing to the public; that various blends were produced and sold under the trade-mark "Twenty Grand," but it was not until April, 1932, that the officials of 'the appellant company were satisfied with its "Twenty Grand" blend; that, due to the reduction in the price of tobacco and to the particular blend selected by it, appellant was able to produce a cigarette for sale under its trade-mark "Twenty Grand," which would retail at 10 cents per package of twenty.

Counsel for appellee is somewhat critical because appellant did not use a particular blend of tobaccos in its "Twenty Grand" cigarettes, prior to June 8, 1932.

We are in entire accord with the views expressed by the Examiner of Trade-Mark Interferences that the precise nature of the blend of tobaccos used in appellant's "Twenty Grand" cigarettes is not of vital importance.

■ It is true that appellant's use of the mark was not extensive, being confined to fourteen sales in interstate commerce during the period from April, 1931, to April, 1932. However, the evidence of record establishes that those sales were neither confidential, nor made secretly. Each of the purchasers recognized the fact that he was buying "Twenty Grand" cigarettes, which were manufactured by appellant only. Surely, the trade-mark law does not prevent a trader dealing with its friends, nor require it to advertise its sales in any particular manner, provided its transactions are bona fide.

It appears from the record that appellant's business was carried on at wholesale, and, to some extent, at retail. Accordingly, the mere fact that the fourteen sales were retail sales is not in and of itself particularly significant. That its use of its mark was not intended to be confidential and secretive, is evidenced by the fact that the mark was registered by appellant with the Tobacco Merchants Association. It further appears from the record—evidence introduced by counsel for appellee—that appellee, whose use of the mark at that time was "inconsiderable," knew that appellant was using the trade-mark at least as early as April 18 and 19, 1932, and that it claimed ownership thereto, because, on those dates, appellee offered to purchase appellant's

trade-mark rights for the sum of $5,000.

In his decision, the Commissioner of Patents stated: "The applicant seeks to attach some significance to the fact that in April, 1932, the opposer offered to purchase the trade-mark from the former for $5,000. From this fact, no implication adverse to the opposer can properly be drawn. An offer to compromise is not to be construed as an admission against interest." Wigmore on Evidence, § 1061 et seq., vol. 2 (p. 522).

■ The general principle of law announced by the Commissioner is, of course, well recognized. However, the evidence of appellee's unsuccessful attempt to purchase appellant's rights in the trade-mark "Twenty Grand" was introduced by counsel for appellee, and no objection was made thereto by counsel for appellant. Surely, under those circumstances, such evidence may properly be considered by the court for the purpose of determining whether the sales made by appellant, as claimed by counsel for appellee, were secretly and confidentially made. If they were, it is a strange circumstance that appellee, who, prior to its adoption of the trade-mark "Twenty Grand" so far as the record discloses, had never been engaged in the tobacco trade should know of appellant's alleged clandestine sales.

It may be said, furthermore, that appellant could not have abandoned the trade-mark, as alleged by appellee, had it not previously adopted and used it as such.

■ We are unable to hold that the sales by appellant during the period in question were sporadic, secretive, confidential, casual, or fortuitous, or that they were experimental, transitory, or inconsiderable within the meaning of those terms as used in the decisions cited by counsel for appellee. On the contrary, we are of opinion that appellant's use of the mark, although not extensive, was deliberate and continuous, and under such circumstances as to show an intention by its sales to adopt it as a trade-mark for cigarettes. Certainly, appellant's continuous use of the mark for at least nine months prior to appellee's adoption and use of its mark, is sufficient, in view of the facts of record, to justify a holding that appellant

has a superior claim, and that appellee will not be damaged by the registration of appellant's mark. See Nims on Unfair Competition in Trade-Marks (3 Ed.) pp. 557 to 568, inclusive, and cases cited.

We are unable to concur in the conclusion reached by the Commissioner of Patents, and, for the reasons stated, his decision is reversed.

Reversed.

LENROOT, Associate Judge, dissents.