**CONTEMPORARY RESTAURANT CONCEPTS, LTD., a Georgia Corporation, Plaintiff,**

v.

**LAS TAPAS–JACKSONVILLE, INC. d/b/a Restaurant Decisions Group and Longhorn Steakhouse, a Florida Corporation, Jay Novak, an Individual, and Christopher O. Descalzo, an Individual, Defendants.**

No. 89–550–Civ–J–16.

United States District Court, M.D. Florida, Jacksonville Division.

Jan. 8, 1991.

Virginia S. Taylor, Mark V. Spix, Atlanta, Ga., Gary B. Tullis, Jacksonville, Fla., for plaintiff.

Christopher O. Descalzo, pro se.

## ORDER

JOHN H. MOORE, II, District Judge.

The above-styled cause is before the Court for reconsideration of Plaintiff CONTEMPORARY RESTAURANT CONCEPTS, LTD.'s Motion for Summary Judgment, filed herein on May 30, 1990. Defendants filed a memorandum in opposition to said motion on June 29, 1990. In accordance with this Court's Order dated November 30, 1990, Defendant CHRISTOPHER O. DESCALZO filed supplemental authority in opposition to Plaintiff's motion on December 7, 1990. Descalzo is the only remaining Defendant since default judgments have been entered against Defendants JAY NOVAK and LAS TAPAS–JACKSONVILLE, INC.

### *Background*

Plaintiff CONTEMPORARY RESTAURANT CONCEPTS, LTD. ("CRC") is a Georgia corporation which is the owner and franchisor of a chain of steak restaurants which, during the relevant time period, consisted of approximately nineteen restaurants operating throughout the southeastern United States. Defendant LAS TAPAS–JACKSONVILLE, INC. ("LAS TAPAS") is a Florida corporation which operated two successive restaurants in Jacksonville, Florida. Defendant CHRISTOPHER O. DESCALZO is the President and sole shareholder of Las Tapas. Defendant JAY NOVAK was the manager of Las Tapas' Jacksonville restaurants.

Beginning in 1981, CRC's predecessor, Longhorn Steaks of Buckhead, Inc., promoted and identified its restaurants with the term "Long Horn Steaks." On February 12, 1985, the United States Patent and Trademark Office issued CRC the service mark "LONG HORN STEAKS" under Registration No. 1,320,021. At all relevant times, CRC continually used this mark in connection with identifying and promoting its restaurant chain.

In January 1989, Las Tapas opened a Spanish-style restaurant in Jacksonville, Florida. Shortly thereafter, the restaurant's revenues began to decline and Defendants Novak and Descalzo sought out alternative restaurant operations. In April 1989, they made inquiries with representatives of Plaintiff concerning the purchase of a restaurant franchise for Jacksonville but CRC rejected their offer. Descalzo then obtained rights in a Florida service mark, Registration No. 927,684, for "LONGHORN STEAKHOUSE." Despite objection from the Plaintiff, Defendants proceeded to open a new restaurant. Using their newly acquired mark, Defendants operated a restaurant known as "Longhorn Steakhouse" in Jacksonville from June of 1989 until August of 1989.

On July 20, 1989, Plaintiff filed an amended five-count complaint alleging, inter alia, violations of federal and state law on the basis of trademark infringement, unfair competition, and unfair and deceptive trade practices. In response, Descalzo has raised affirmative defenses asserting that Defendants' rights in the Florida service mark are superior and that CRC's mark is weak and unenforceable. Plaintiff now seeks the entry of summary judgment in its favor on the first four counts of the complaint, and additional relief.

### Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c).[1] "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The standard of review "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the ... [Defendant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the ... [Defendant]." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

### Plaintiff's Claims

In the first two counts of its Complaint, Plaintiff alleges trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1114(1) and § 1125(a). The third count involves alleged violations of the common law of trademark infringement and unfair competition. In the fourth count, Plaintiff asserts that the Defendants violated Florida's Unfair and Deceptive Trade Practices Act, Fla.Stat. § 501.201, *et seq.*

The law of trademark infringement can be considered a subset of the law of unfair competition. *Jellibeans Inc. v. Skating Clubs of Georgia*, 716 F.2d 833, 839 (11th Cir.1983); *Freedom Savings and Loan Assn. v. Way*, 757 F.2d 1176, 1186 (11th Cir.1985). The legal standard for federal trademark infringement and unfair competition and common law trademark infringement are essentially the same. *American United Life Ins. v. American United Ins.*,

---

**1.** Trademark infringement and unfair competition claims fall within the purview of Rule 56.

*See, e.g., Rolex Watch U.S.A., Inc. v. Canner*, 645 F.Supp. 484 (S.D.Fla.1986).

731 F.Supp. 480, 486 (S.D.Fla.1990); *Original Appalachian Artworks v. Topps Chewing Gum*, 642 F.Supp. 1031, 1036 (N.D.Ga.1986). Therefore, the Court will analyze these claims simultaneously.

■ To establish a claim for trademark infringement one must show (1) ownership of the trademark, and (2) the likelihood of confusion of the accused mark with its registered mark. *Varitronics Systems, Inc. v. Merlin Equipment, Inc.*, 682 F.Supp. 1203, 1206 (S.D.Fla.1988); *Chassis Master Corp. v. Borrego*, 610 F.Supp. 473, 475 (S.D.Fla.1985). Ownership of a mark can be demonstrated by valid registration and actual prior use. There is no dispute concerning Plaintiff's prior use of its mark which was registered in 1985. Instead, Descalzo contends that Defendants' mark is superior. However, a review of the record herein reveals that Descalzo's position is without merit and does not raise a genuine issue of material fact.

■ Descalzo argues that their mark, which was bought in 1989, is superior because it was originally registered in Florida in 1982 and, therefore, it precedes Plaintiff's mark. In response, CRC correctly points out that Defendants' mark was not used from 1983 until it was assigned to Descalzo in 1989. Pursuant to 15 U.S.C. § 1127, non-use of a mark for two years constitutes prima facie evidence of abandonment. *See E. Remy Martin & Co. v. Shaw–Ross Intern. Imports*, 756 F.2d 1525, 1532 (11th Cir.1985). Descalzo has not offered one iota of evidence to rebut this presumption of abandonment. Therefore, the Court finds that Plaintiff had valid ownership rights in its mark well prior to Descalzo's purchase of the abandoned mark in 1989. Accordingly, the remaining issue as to these counts is whether there exists a genuine issue of material fact as to the likelihood of confusion between the two marks.

■ In determining whether such a likelihood of confusion exists, courts examine several factors. *Wesco Mfg. v. Tropical Attractions of Palm Beach*, 833 F.2d 1484, 1488 (11th Cir.1987); *Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir.1986);

*Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1514 (11th Cir.1984). These factors include: (1) the type of trademark; (2) degree of similarity between the two marks; (3) similarity between the two services; (4) identity of retail outlets and purchasers; (5) identity of advertising media utilized; (6) defendant's intent; (7) actual confusion. None of these factors are dispositive, but rather, the court should attach the appropriate weight to each factor when considering the totality of the circumstances. *Swatch Watch, S.A. v. Taxor, Inc.*, 785 F.2d 956, 958 (11th Cir.1986).

■ With regard to the first factor, it is well established that strong marks are entitled to more protection than weak marks. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973 (11th Cir. 1983). Defendants argue that CRC's mark is weak because the term "Longhorn" is used by numerous third parties. However, beyond these conclusory allegations, Defendants do not offer any proof of the extent to which the marks are used. *See Varitronics*, 682 F.Supp. at 1207 (mere citations of third party registrations do not prove the weakness of a mark). Defendants fail to demonstrate third-party usage in a format similar to that of the Plaintiff. Use of the same or similar marks by third parties in unrelated businesses does not diminish the distinctiveness of a mark in a particular area. *See Safeway Stores, Inc. v. Safeway Discount Drugs*, 675 F.2d 1160, 1165 (11th Cir.1982).

■ Defendants also assert, without substantiation, that Plaintiff's mark is merely descriptive and, therefore, entitled to minimal protection. In general, there are four categories of trademark strength. Trademarks are classified, along a continuum, as either arbitrary, suggestive, descriptive or generic. *American Television & Communications Corp. v. American Communications & Television*, 810 F.2d 1546, 1548 (11th Cir.1987). An arbitrary or fanciful name bears no relationship to the product or service and receives the strongest protection. A suggestive term suggests, rather than describes, a characteris-

tic of the goods or services. A descriptive term identifies a characteristic or quality of a service and is protectable only if it acquires secondary meaning. Secondary meaning refers to the tendency of the consumer public to associate a term with a particular producer or source, rather than the goods and services themselves. A generic name identifies the basic nature of a product or service and is not entitled to protection.

Distinguishing descriptive terms from suggestive terms involves an evaluation of what prospective consumers perceive in terms of an indication of source, as well as the potential impact on competitors of the appropriation of the term as a trademark by a particular seller. *See* Restatement (Third) of Unfair Competition § 14, comment b, at 62. (Tent.Draft No. 2 1990). After applying the classification process to the facts presented here, the Court finds that, at a minimum, CRC's mark is suggestive and entitled to strong protection.[2] The term "Long Horn" certainly does not describe the product or service which CRC provides. However, by using one's imagination, and in conjunction with the term "Steaks," consumers can identify certain attributes which can be associated with CRC's restaurants.

■ In determining the degree of similarity of design between the two marks, the second factor, the Court must consider the overall impression created by the marks as a whole rather than simply comparing individual features of the marks. *Exxon Corp. v. Texas Motor Exchange, Inc.*, 628 F.2d 500, 504 (5th Cir.1980). This comparison includes the appearance, sound and meaning of the marks in addition to the manner in which they are used. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 260 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129

(1980). Here, both marks are used to identify steak restaurants. The fact that Defendants' mark combines the term "Longhorn" into one word is unpersuasive since the phrase still consists of two syllables. After comparing the marks, the Court finds that the similar sight, sound and meaning of the two marks is likely to lead to confusion.

Due to the nature of this dispute, the analysis of the third and fourth factors tends to overlap. Both restaurants feature steak as the predominant menu item and seek to attract a similar type of dining crowd. Although the decor and menus for the Defendants' restaurant vary slightly from Plaintiff's restaurants, substantial similarities still remain. The fifth factor is not pertinent here inasmuch as the record does not disclose any identity of advertising between Defendants and Plaintiff.

■ The Defendants' intent is the sixth factor. There is no dispute that after having dined at one of Plaintiff's restaurants, Defendants Novak and Descalzo sought to obtain franchise rights for one of their restaurants in Miami or Jacksonville. At that time, they were well aware that Plaintiff owned the federally registered service mark for "Long Horn Steaks." Despite being denied franchise rights and receiving a cease-and-desist notice from CRC's counsel, the Defendants proceeded with plans to open a restaurant in Jacksonville called "Longhorn Steakhouse." Apparently, by obtaining rights to a Florida service mark with that title, Defendants hoped to add a sense of legitimacy to their planned restaurant.

In reviewing this sequence of events, the inescapable conclusion is that Defendants intended to profit from CRC's established reputation by obtaining a service mark and operating a restaurant which were substantially similar. Defendants could have

---

**2.** Because the Court has found CRC's mark to be suggestive, proof of secondary meaning is not required. *See University of Georgia Athletic Association v. Laite,* 756 F.2d 1535, 1541 (11th Cir.1985). Nonetheless, it is worth noting that the record contains evidence that CRC has devoted substantial time and effort into developing a commercially potent trademark. In addi-

tion, courts have held that secondary meaning can be demonstrated when it is shown that an infringer intentionally copied a mark, which is essentially what the Defendants did here. *See 20th Century Wear, Inc. v. Sanmark–Stardust, Inc.,* 747 F.2d 81 (2d Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1755, 84 L.Ed.2d 818 (1985).

opened any type of restaurant; however, with full knowledge of CRC's preexisting good will, they chose to imitate their operation. There can be no doubt that Defendants intended to derive benefit from Plaintiff's earlier success. Courts have found evidence of this factor alone to be sufficient to reach a finding of likelihood of confusion. *See Ambrit, Inc.*, 812 F.2d at 1542.

Evidence of actual confusion, the seventh factor, is considered the best evidence of likelihood of confusion. *See, Amstar Corp.*, 615 F.2d at 263; *John H. Harland Co.*, 711 F.2d at 978. The evidence of actual confusion in this case is significant. Descalzo does not dispute that numerous individuals in the local community have expressed confusion as to whether the Defendants' restaurant was associated with the CRC chain. It is also undisputed that a potential investor inquired as to the status of Plaintiff's failing restaurant in Jacksonville.

Weighing all of the factors and evidence, the Court concludes that CRC has made a more than sufficient showing of likelihood of confusion. There are no genuine issues of material fact which preclude the conclusion that CRC's mark is strong and Descalzo intentionally sought to take full advantage of Plaintiff's established mark.

■ In Count Three, Plaintiff has also asserted a claim for common law unfair competition. To prevail on such a claim based on service mark infringement, the Plaintiff must prove (1) that plaintiff is the prior user of the trade name or service mark; (2) that the trade name or service mark is arbitrary or suggestive or has acquired secondary meaning; (3) that the defendant is using a "confusingly similar trade name or service mark to indicate or identify similar services rendered (or similar goods marketed) by it in competition with plaintiff in the same trade area in which plaintiff has already established its trade name" or service mark; and (4) that as a result of defendant's action or threatened action, consumer confusion as to the source or sponsorship of defendant's goods and services is likely. *American Bank of Merritt Island v. First Am. Bank and Trust*, 455 So.2d 443, 445–6 (Fla. 5th DCA 1984), *review denied*, 461 So.2d 114 (Fla. 1985). In light of this Court's previous analysis, the Plaintiff has also proved each of the necessary elements in its claim for common law unfair competition.

■ Finally, Plaintiff alleges, in Count Four, that Defendants violated Florida Statute Section 501.204 by engaging in unfair and deceptive business practices. Violations of this statute include the notion of "palming off." *Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.*, 533 F.Supp. 75, 84 (S.D.Fla.1981). Under the present facts, palming off would consist of the Defendants attempting to market their restaurant as if it were part of Plaintiff's restaurant chain. As determined by the Court in the preceding analysis, Defendants engaged in this type of conduct. Therefore, Plaintiff is entitled to relief on this claim.

### Descalzo's Affirmative Defenses

Defendant Descalzo has raised several affirmative defenses. All but one of these defenses involve matters which the Court has analyzed above and they merit no further discussion at this point. However, in his second affirmative defense and in his supplemental authority opposing summary judgment, filed on December 7, 1990, Descalzo does raise an additional matter which the Court must address.

■ Descalzo argues that he is shielded from personal liability for his conduct because, at all relevant times, he was acting within his corporate capacity. However, it is well established that a corporate officer can be held personally liable for acts of trademark infringement if it is shown that the individual caused such acts to occur. *Mead Johnson & Co. v. Baby's Formula Service, Inc.*, 402 F.2d 19, 23 (5th Cir.1968).

The record herein demonstrates that Descalzo had extensive personal participation in the events underlying this dispute. In fact, Descalzo himself purchased the rights to the Florida service mark and then assigned those rights to Las Tapas. Moreover, Descalzo has acknowledged that

he was the sole director, officer, and shareholder of Las Tapas, which allowed Descalzo to control the decision-making activities of the corporation. However, when the time arrives to assess liability for past conduct, Descalzo contends that Plaintiff must only look to Las Tapas to collect damages. Meanwhile, Descalzo would readily admit that Las Tapas currently has no assets and has ceased to function. The Court finds that, in view of Descalzo's prior conduct, it would be inequitable to permit Descalzo to shield himself from liability behind a defunct corporation. Therefore, Descalzo is liable in his individual capacity for any damages which Plaintiff may prove.

### Relief

By way of relief, CRC requests a permanent injunction, an accounting of profits, actual damages (which Plaintiff seeks to treble), and attorney's fees. On August 31, 1989, this Court entered a preliminary injunction by consent. In accordance with the Court's previous findings, the Plaintiff has demonstrated its entitlement to a permanent injunction in its favor. Plaintiff's counsel is directed to provide the Court with an appropriate order for review. As for all other matters relating to damages, these issues will be heard during the scheduled trial in this cause.

In sum, the Court finds that Plaintiff's Motion for Summary Judgment must be granted. Accordingly, it is now

ORDERED and ADJUDGED:

1. That this Court's Orders dated July 10, 1990 and September 12, 1990, denying Plaintiff's motion for summary judgment, are hereby VACATED.

2. That Plaintiff's Motion for Summary Judgment is GRANTED as to Counts I, II, III, and IV of its Complaint.

3. That the Court will enter a separate order providing for permanent injunctive relief in favor of Plaintiff. Counsel for Plaintiff is hereby directed to prepare a proposed order which shall be submitted to the Court and Defendant Descalzo at or prior to the commencement of trial.

4. That the issue of damages shall be tried during the trial term commencing January 7, 1991.

DONE AND ORDERED.