LEVI STRAUSS & CO., Plaintiff,

v.

Roberto A. DIAZ, Defendant.

No. 90–1904–CIV–KEHOE.

United States District Court,
S.D. Florida.

April 18, 1991.

Harley Tropin, Miami, Fla., for plaintiff.

Jerry Schreiber, Miami, Fla., for defendant.

## FINAL JUDGMENT

KEHOE, District Judge.

THIS MATTER came before this Court for trial on March 26 and March 28, 1991. The Court has reviewed the evidence introduced by both parties at trial, has examined the file, and is otherwise fully advised in the premises. Based on the above, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

On December 15, 1989, customs officials in France seized 21,600 pairs of counterfeit LEVI's 501 jeans. Documents relating to that seizure disclosed that a Florida corporation named Sterling Industries U.S.A. Corporation ("Sterling") had acted as broker in the transfer of those counterfeit jeans to France.

In December of 1989, Sterling operated out of the home of Defendant, Roberto A. Diaz ("Mr. Diaz"). Although corporate records listed Mr. Diaz's son as president

and sole shareholder of Sterling, the evidence introduced at trial disclosed that in 1989 Mr. Diaz negotiated all terms for the transfer of the counterfeit goods to France, maintained all corporate records, and was Sterling's sole employee, while his son was a full-time college student.

Mr. Diaz initially purchased the counterfeit goods from a man named Humberto Suarez in Hialeah. Mr. Diaz had never heard of Mr. Suarez prior to this transaction, and only met with Mr. Suarez on one occasion to negotiate the deal. Mr. Diaz never asked Mr. Suarez whether he dealt in legitimate LEVI's 501 jeans, or whether he was an authorized distributor for Levi Strauss & Co. ("Levi Strauss"), even though he had been previously advised by Levi Strauss that legitimate merchandise could only be purchased from authorized Levi Strauss distributors.

Mr. Diaz, through Sterling, made a profit of approximately $59,500.00 from the transfer of the counterfeit goods to France. Mr. Diaz failed to introduce at trial evidence of any expenses which would reduce that profit.

## CONCLUSIONS OF LAW

This Court has jurisdiction over the parties and the subject matter of this action. Mr. Diaz has been properly served with Plaintiff's Complaint.

## I. PLAINTIFF'S PRIMA FACIE CASE

Plaintiff has established that it owns the federally registered trademarks for "LEVI's" and "501," and has the exclusive right to utilize those marks. Plaintiff has also established that the goods seized by French customs officials in December of 1989 were counterfeit LEVI's 501 jeans which infringed upon the plaintiff's trademarks. Finally, Plaintiff has established that Mr. Diaz, through Sterling, acted as broker in the transfer of those jeans to France, and derived a profit of approximately $59,500.00. Plaintiff has therefore proven its *prima facie* case of trademark infringement, unfair competition and counterfeiting against Defendant.

## II. DEFENDANT'S DEFENSES

Defendant has asserted the following defenses: (i) that Sterling, and not Mr. Diaz acted as broker for the counterfeit goods, and (ii) that Mr. Diaz was an "innocent infringer," who was duped by the person or persons who sold him the counterfeit goods. For the reasons set forth below, the Court finds these defenses insufficient and non-persuasive.

## A. DEFENDANT IS INDIVIDUALLY LIABLE FOR HIS ACTS OF INFRINGEMENT

■ The record clearly reflects that in December of 1989 Mr. Diaz controlled Sterling, and personally negotiated all terms, and committed all acts of infringement upon Plaintiff's marks. Mr. Diaz cannot hide behind the corporate shield, and is personally liable for all infringing acts which he has committed. *Mead Johnson & Co. v. Baby's Formula Service, Inc.,* 402 F.2d 19 (5th Cir.1968); *Contemporary Restaurant Concepts, Ltd. v. Las Tapas–Jacksonville, Inc.,* 753 F.Supp. 1560 (M.D.Fla.1991); *Polo Fashions, Inc. v. Gordon Group,* 627 F.Supp. 878 (M.D.N.C.1985).

## B. DEFENDANT IS NOT AN "INNOCENT INFRINGER"

Plaintiff has established Mr. Diaz's involvement in a counterfeiting activity, and pursuant to 15 U.S.C. § 1117(b), Plaintiff is entitled to an award of treble damages and attorneys' fees, unless Mr. Diaz can prove extenuating circumstances, such as lack of knowledge or intent, to mitigate these damages. The Court finds that the Defendant has failed to meet this burden.

Mr. Diaz argues that he was an "innocent infringer," who was duped by the person or persons who sold him the counterfeit merchandise into believing that they were legitimate Levi Strauss goods. However, the Court finds that Mr. Diaz was so remiss in failing to make appropriate inquiry concerning the legitimacy of these goods, that an award of treble damages

and attorneys' fees pursuant to 15 U.S.C. § 1117(b) is justified.

■■■ Willful blindness is knowledge enough. *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir.1989). Mr. Diaz has testified that (i) he purchased the counterfeit goods from a man named Humberto Suarez in Hialeah, (ii) he had never previously heard of Mr. Suarez, and met with him only once to negotiate the terms of this transaction, and (iii) he never called Levi Strauss to determine whether Mr. Suarez was an authorized distributor of Levi Strauss goods, even though Mr. Diaz had been previously advised by Levi Strauss that he could only purchase Levi Strauss goods from authorized Levi Strauss distributors. Moreover, Mr. Diaz never asked Mr. Suarez whether he was an authorized Levi Strauss distributor, or whether he dealt in legitimate Levi Strauss goods.

It is clear to this Court that the goods transported to France were not of the type or quality normally produced by Levi Strauss. The goods were of such inferior quality, that even a minimal inquiry by Mr. Diaz would have disclosed their counterfeit nature. Mr. Diaz's failure to make a sufficient inquiry as to the genuineness of the goods under these circumstances constitutes willful blindness and renders Mr. Diaz liable for treble damages and attorneys' fees, pursuant to 15 U.S.C. § 1117(b). *Id.*

### III. DAMAGES

On Plaintiff's claims of trademark infringement, unfair competition, and counterfeiting, this Court finds in favor of Plaintiff, Levi Strauss & Co., and against Defendant, Roberto A. Diaz. The Court awards Plaintiff damages in the total amount of Defendant's profits, or $59,-500.00, and trebles these damages pursuant to 15 U.S.C. § 1117(b). Final Judgment is hereby entered in favor of Plaintiff, Levi Strauss & Co., and against Defendant, Roberto A. Diaz, in the total sum of $178,-500.00, which shall bear interest at the applicable statutory rate, for which let execution issue.

■■■ The Court further awards Plaintiff its reasonable attorneys' fees and costs incurred in connection with the bringing of this action. The parties are hereby directed to submit affidavits to be used by the Court in determining the precise amount of attorneys' fees and costs to be awarded to Plaintiff. The Court retains jurisdiction over the parties and the subject matter of this action to enter a judgment for attorneys' fees and costs in favor of Plaintiff, Levi Strauss & Co., and against Defendant, Roberto A. Diaz. The Court denies Plaintiff's claim for punitive damages.

### IV. PERMANENT INJUNCTION

The Court further orders that Mr. Diaz, his agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, or under him, and each of them, be and they hereby are, permanently enjoined and restrained:

a. from using in any manner the marks "LEVI's" "501," or the name "Levi Strauss," or each of them, alone or in combination with any word or words, design or designs, which so resemble each said trademark as to be likely to cause confusion, deception or mistake on, or in connection with, the advertising, offering for sale or sale of any products not for sale, or sale of any products not plaintiff's, or not authorized by plaintiff to be sold in connection with said marks and/or name;

b. from selling or passing off, or inducing or enabling others to sell or pass off as and for plaintiff's products, or as and for products produced by plaintiff, any product not plaintiff's, or not produced under the control or supervision of plaintiff and approved by plaintiff for sale under the marks "LEVI's," "501," or the name "Levi Strauss," or each of them;

c. from committing any acts calculated to cause purchasers to falsely believe that defendant's products are sold under the control and supervision of plaintiff, or are sponsored, approved

or guaranteed by, or connected with, plaintiff;

d. from further diluting and infringing the said trademarks of plaintiff Levi, and damaging its goodwill;

e. from otherwise competing unfairly with plaintiff in any manner; and

f. from shipping, delivering, distributing, returning or otherwise disposing of, in any manner, products or inventory, not manufactured by, or for, plaintiff, nor authorized by plaintiff to be sold or offered for sale, and which bear the marks "LEVI's," "501," and/or the name "Levi Strauss," or each of them;

Finally, the Court orders that, within ten (10) days of this Final Judgment, Mr. Diaz shall deliver to plaintiff's counsel any and all items of clothing, and other materials in the possession of Mr. Diaz, or under his control, bearing the marks "LEVI's," "501," and/or the name "Levi Strauss," or each of them, alone or in combination with any other words or designs, which are used in connection with the advertising, offering for sale, or sale of products bearing Levi Strauss marks, "LEVI's" and/or "501" and/or the name "Levi Strauss," which are not Levi Strauss products, or which were not made under the control and authorization of Levi Strauss.

DONE AND ORDERED.