**TIMEX CORPORATION, Plaintiff,**

v.

**Leo STOLLER, individually and d/b/a Sentra Sporting Goods U.S.A. CO., Stealth Industries, Inc. d/b/a Stealth Industries, Inc. and U.S.A. Imports, S Industries, Inc. and John Does 1–15, Defendants.**

No. 3:95 CV 2505(GLG).

United States District Court,
D. Connecticut.

April 7, 1997.

Frank T. Judge, III, Kathryn Patridge, Timex Corp., Middlebury, CT, for Plaintiff.

John C. Brezina, Chicago, IL, for Defendants.

## OPINION

GOETTEL, District Judge.

Plaintiff Timex Corporation ("Timex") moves for summary judgment on each count of its complaint. Defendants cross move for summary judgment based on unclean hands. For the reasons discussed below, plaintiff's motion (Document # 30) is GRANTED and defendants' motion (Document # 39) is DENIED.

## BACKGROUND

Defendant Leo Stoller is a citizen of the State of Illinois. He is the current president and chief executive officer of, and controls, two Delaware corporations—defendants Stealth Industries, Inc. ("Stealth Industries") and S. Industries, Inc. ("S Industries"). Sentra Sporting Goods U.S.A. Co. is an unincorporated trade style of Leo Stoller. U.S.A. Import is an unincorporated trade style of Stealth Industries.

Among other things, Leo Stoller and these companies are in the business of selling products under the mark STEALTH. Leo Stoller, doing business as Sentra Sporting Goods U.S.A. Co., has registered the mark STEALTH for "sporting goods, specifically, tennis rackets, golf clubs, tennis balls, basketballs, baseballs, soccer balls, golf balls, cross bows, tennis racket strings and shuttlecocks." Reg. No. 1,332,378 (April 23, 1985). S Industries has also registered the mark STEALTH for "bicycles, motorcycles and boats." Reg. No. 1,434,642 (March 31, 1987).

According to defendants' version of events to which plaintiff has no knowledge, ownership of Stealth Industries, Inc. has been the

subject of much dispute. In 1989, a controversy arose between Leo Stoller, his brother Christopher Stoller, and their father Russell Stoller, concerning the ownership of Stealth Industries. An arbitration agreement was subsequently signed by all three Stollers on November 6, 1989, agreeing to arbitrate the issue of who owned and controlled Stealth Industries. Following arbitration hearings held in December of 1989 and January of 1990, the arbitrators issued an award on January 31, 1990, deciding that ownership and control of Stealth Industries would go to Russell Stoller. Apparently at his father's direction, Christopher Stoller then had armed guards remove Leo Stoller from the premises of the family business.

Shortly after the arbitration award was issued, Leo Stoller contested the award in the Illinois Chancery Court of Cook County. In June 1994, pursuant to a settlement agreement entered into between Christopher, Leo, and Russell Stoller, the Chancery Court vacated the arbitration award. Leo Stoller then returned to Stealth Industries, after having been excluded for more than four years. He is now its current president and chief executive officer.

Around the same time in 1989 that the Stollers were disputing who should control Stealth Industries, Timex began efforts to market watches with the mark STEALTH. Timex first made limited use of this mark in connection with watches on or about September 25, 1989. On October 16, 1989, Timex filed an application to register the mark STEALTH for use on watches with the United States Patent and Trademark Office ("PTO"), and on February 13, 1990, the application was published for opposition.

While all defendants admit that they were aware that Timex had applied to register STEALTH for watches, only defendant Stealth Industries opposed the application. In its opposition, filed on or about April 13,

1990, Stealth Industries asserted that it had sold watches under the STEALTH mark prior to September 25, 1989. Stealth Industries also filed an application for the trademark STEALTH for watches, clocks, timing devices and stop watches with the PTO on June 11, 1990.

On November 18, 1991, a settlement agreement was entered into between Timex and Stealth Industries.[1] Pursuant to the terms of the agreement, Stealth Industries assigned to Timex all rights it had to the trademark STEALTH in connection with watches, clocks, other horological instruments and accessories. Stealth Industries further agreed to withdraw its notice of opposition against Timex's application, not to file any additional opposition, and to withdraw its own application for the use of STEALTH on watches, clocks, timing devices and stop watches. Stealth Industries acknowledged Timex's ownership of the mark STEALTH for timekeeping instruments and accessories, and agreed not to do anything inconsistent with such ownership. Finally, Stealth Industries represented that it was unaware of any other claim of ownership of or use of the trademark STEALTH by any person or entity in connection with timekeeping instruments or accessories. In consideration for these and other commitments, Timex agreed to pay Stealth Industries the sum of $20,000.

In connection with this settlement, Stealth Industries supplied to Timex an agreement allegedly entered into in 1989 between Stealth Industries and Leo Stoller. This agreement, entitled "assignment," purports to transfer all rights in three trademarks from Leo Stoller to Stealth Industries. The three trademarks, listed on an attached schedule, are: STEALTH (number 1,434,-642), HONEYCOMB (number 1,386,157), and STEALTH (1,332,378).

---

1. Defendants assert that this settlement agreement was entered into by § Industries, not Stealth Industries. We find no support for this contention and find that there is no genuine issue of material fact regarding the parties involved in the settlement agreement. Defendants admits that Christopher Stoller acted as president of Stealth Industries during Leo Stoller's absence from the business. The agreement is signed by Christopher Stoller, as president of Stealth Industries, and it makes numerous references to Stealth Industries as the party entering into the settlement. The agreement contains no reference to S Industries, and we therefore reject defendants' unsupported assertion that this agreement involved S Industries.

Defendants vigorously dispute the validity of this assignment. They assert that the assignment was not signed by Leo Stoller, but rather Leo Stoller's name was forged on the agreement by Christopher Stoller. In support of this allegation, defendants submit other documents containing Leo Stoller's signature that do not resemble the signature on the assignment.

In explanation for Christopher Stoller's forgery of his brother's signature, defendants explain that in-house counsel for Timex told Christopher Stoller during settlement negotiations, sometime after July 26, 1991 and before November 18, 1991, that Timex needed an assignment from Leo Stoller of his trademark rights to Stealth Industries. Christopher Stoller allegedly told Timex's in-house counsel that Leo Stoller would not sign such an assignment, and this attorney allegedly told Christopher Stoller to forge Leo Stoller's name on an assignment agreement. Defendants do not, however, explain why the assignment is dated 1989; neither do they allege that this date was incorrect.[2]

Pursuant to the settlement agreement, Timex did in fact pay Stealth Industries the $20,000[3] and Stealth Industries did withdraw its pending application for registration and its opposition to Timex's registration. Timex's application subsequently proceeded to register on September 1, 1992.

Timex actively began to sell and promote its STEALTH watches following the November 18, 1991 settlement agreement. Since that time, Timex has sold more than half a million STEALTH watches, and a Timex licensee, who sells Timex replacement watch straps, has sold more than 25,000 watch straps bearing the STEALTH trademark.

Timex continues to market and sell these products.

Between November 18, 1991 and September 1, 1995, Timex's use of the STEALTH trademark for watches was unchallenged. Each of the defendants now challenges Timex's rights in the STEALTH trademark. Defendants all admit that they have used the STEALTH trademark in connection with watches since September 1, 1992, and that they are presently offering for sale and/or selling watches with the STEALTH trademark throughout the United States. Defendants also admit that they made use of the STEALTH trademark for watches with knowledge that Timex held a registration for STEALTH for watches. Defendant Stealth Industries further admits that it sold watches bearing the STEALTH trademark less than a year after it entered into the settlement agreement with Timex.

Upon returning to Stealth Industries, Leo Stoller allegedly first learned that Timex had a registration for the mark STEALTH in 1995.[4] Leo Stoller then filed a petition to cancel that registration. That petition has been stayed pending resolution of this case.

Timex commenced this litigation with a ten count complaint on November 21, 1995. Timex alleges statutory and common law trademark infringement, false representation as to the source, unfair trade practices, and unfair competition by all defendants. Timex also alleges tortious interference with contract by defendant Leo Stoller and S Industries, Inc. In the alternative, Timex alleges breach of contract, breach of the implied covenant of good faith and fair dealing, or fraud by defendant Stealth Industries.

---

**2.** Obviously, either the assignment was backdated, or it was prepared prior to Timex's attorney's request for such documentation. If the date is correct, defendants' allegation that Timex's attorney suggested the forgery of Leo Stoller's name must be inaccurate since this suggestion is not alleged to have occurred until sometime after July 26, 1991.

**3.** Timex sent a check for $20,000 to Stealth Industries' attorneys, and the canceled check reflects that it was endorsed by Stealth Industries. Defendants do not specifically dispute that Timex actually sent this payment to Stealth Industries, but rather only that the present defendants do

not now have this money. Defendants assert that when the family litigation involving the ownership of Stealth Industries was settled in June 1994, all financial and other assets of Stealth Industries were dissipated and Leo Stoller got nothing of value. We attach no significance to the fact that Stealth Industries did not possess this $20,000 more than two years after the company received it.

**4.** While he was apparently unaware that Timex had a registration for STEALTH, as discussed above, he admits that, in 1990, he was aware that Timex had applied for such registration.

Timex now moves for summary judgment on each count of its complaint. Defendants cross-move for summary judgment based on unclean hands.

## DISCUSSION

On a motion for summary judgment, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party satisfies its burden of demonstrating the absence of any issues of material fact, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Defendants' opposition to plaintiff's motion is, at best, confused. Before addressing whether plaintiff is entitled to summary judgment on each count of its complaint, we will first discuss defendants' general arguments in opposition to plaintiff's motion.

Defendants take the position that all wrongful acts were performed by Christopher Stoller, and not Leo Stoller and his current empire, and therefore defendants are not liable for any alleged wrongs. Next, defendants argue that Christopher Stoller had no authority to bind Stealth Industries, and therefore Christopher Stoller's assignment of Stealth Industries' rights to the trademark STEALTH is invalid. Additionally, defendants argue that any such assignment is invalid because Stealth Industries had no rights in the trademark STEALTH. According to defendants, since Christopher Stoller and Stealth Industries had no rights to transfer to Timex, Timex somehow does not hold a valid trademark in the use of STEALTH for watches. These arguments fail for numerous reasons.

■ We first reject defendants' position that Christopher Stoller lacked authority to bind Stealth Industries. In numerous instances cited by plaintiff, Christopher Stoller acted as and performed the duties of president of Stealth Industries. In addition, defendants admit that Christopher Stoller acted as president of Stealth Industries during Leo Stoller's absence. In spite of these actions, defendants' current position is that Christopher Stoller's actions as president of Stealth Industries are not now binding on Stealth Industries, since Leo Stoller is the current president. Defendants position seems to be premised on the family dispute over ownership of Stealth Industries that was occurring during the period of 1990 through 1994. Defendants apparently believe that since Leo Stoller eventually emerged as the owner of Stealth Industries, he is and has been the rightful owner of Stealth Industries, and is the only one that could have legally bound Stealth Industries.

■ This argument is, of course, premised on incorrect legal conclusions. Stealth Industries is a Delaware corporation, an independent legal entity distinct from Leo or Christopher Stoller. *See American Protein Corp. v. AB Volvo*, 844 F.2d 56 (2d Cir.)("A corporation is an entity that is created by law and endowed with a separate and distinct existence from that of its owners."), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). A corporation cannot act on its own; it must operate through its agents. While Leo Stoller was expelled from Stealth Industries, Stealth Industries acted through Christopher Stoller. Regardless of whether the arbitrators correctly or incorrectly determined the owners of Stealth Industries, we find there exists no genuine issue of material fact regarding Stealth Industries continued existence from the beginning of 1990 until June of 1994, during which time Leo Stoller was not involved. Even taking all facts in the light most favorable to defendants, and drawing all reasonable inferences therefrom, we find that Stealth Industries clearly continued to operate during this time. Christopher Stoller's actions as presi-

dent of Stealth Industries are therefore clearly binding on Stealth Industries.[5]

■ We also reject defendants' argument that Timex somehow has invalid or unenforceable trademark rights in the use of STEALTH for watches because Stealth Industries did not have valid rights to transfer to Timex. The uncontested facts clearly reveal that none of the defendants has registered STEALTH for use on watches or other timepieces. As will be discussed below, Timex's rights in the trademark STEALTH stem from its own registration and use of that trademark, not from some assignment from Leo Stoller to Stealth Industries to Timex. Likewise, defendants' cross-motion for summary judgment must fail. Defendants assert that Timex has "unclean hands" that prevent it from enforcing any trademark rights in STEALTH because it acquired such rights improperly through an invalid transfer from Stealth Industries. Even accepting as true defendants' theory that Timex's attorney suggested that Christopher Stoller forge his brother's name to the assignment, such a forgery would not taint Timex's independently acquired trademark rights in the use of STEALTH on watches since that assignment did not involve the use of the mark STEALTH on watches or other timepieces. We therefore DENY defendants' cross-motion for summary judgment.

Having rejected defendants' various arguments in opposition to plaintiff's motion and in support of their own, we now address the substance of plaintiff's motion. Even where there are no genuine issues of material fact, we must still determine whether plaintiff is entitled to judgment as a matter of law on each of its claims.

### 1. Trademark Infringement

Timex was granted the registration of STEALTH for watches by the PTO on September 1, 1992. Reg. No. 1,711,555. Such registration is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration. . . ." 15 U.S.C. § 1115(a). Since September 1, 1992, defendants admitted that they have offered and are now offering for sale and/or selling watches with the STEALTH trademark throughout the United States. Absent some defense, defendants are therefore liable to Timex for infringement of a registered trademark. *See* 15 U.S.C. § 1114(1)

■ Defendants assert defenses defined in 15 U.S.C. § 1115(b)(1) and (8). Section 1115(b)(1) provides a defense to trademark infringement if "that registration or the incontestable right to use the mark was obtained fraudulently." We find absolutely no evidence of such fraud. Even accepting as true defendants' allegations of forgery involving the assignment between Leo Stoller and Stealth Industries, this assignment is simply irrelevant to Timex's trademark rights in STEALTH. None of the trademark rights purportedly assigned consist of rights in the use of STEALTH for watches or other timepieces and accessories. Rather, the rights assigned consist of rights in registered trademarks for STEALTH for use with other items, and for the use of the mark HONEYCOMB. Which party currently owns or then owned rights to use the trademark STEALTH on other products is not at issue in this litigation.

■ We also reject defendants assertion that Timex's registration was obtained fraudulently because Timex made insufficient use of the mark prior to applying for its registration. While the Lanham Act, by modification made effective in November 1989, now permits the filing of an intent-to-use application, *see* 15 U.S.C. § 1051(b), prior to this amendment, pursuant to what is now 15 U.S.C.

---

**5.** We are also unpersuaded by defendants' argument that Christopher Stoller's actions are not binding on Stealth Industries because Timex was aware of the intra-family ongoing dispute over ownership of Stealth Industries. Even assuming that Timex was fully aware of the dispute, there is no legal support for such a conclusion. Regardless of its owner, Stealth Industries was, and continues to be, an active independent entity capable of contractually committing itself to others.

§ 1051(a), registration of a trademark was only permitted by "owners of a trademark used in commerce." This language required that a party seeking registration first "use" the mark in commerce.

In order to protect potential registrants, like Timex here, from investing substantial sums of money in promotion before obtaining registration of a trademark, this "use" requirement has been liberally construed. Very limited sales, combined with proof of intent to go on selling, permitted a vendor to register the mark. *See Department of Justice v. Calspan Corp.*, 578 F.2d 295 (C.C.P.A. 1978); *Axton–Fisher Tobacco Co. v. Fortune Tobacco Co.*, 23 C.C.P.A. 982, 82 F.2d 295 (1936); *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538 (2d Cir. 1956).

We find there exists no genuine issue of material fact regarding plaintiff's initial use of the trademark STEALTH on or about September 25, 1989, nor regarding plaintiff's intention to continue selling watches with this mark. While the record—consisting of both an affidavit by the attorney who represented Timex in connection with its registration of STEALTH and the application for trademark register—indicates only limited use of the mark STEALTH prior to Timex's attempt to register it, we do not find that such limited use invalidates Timex's registration. *See Maternally Yours, Inc.*, 234 F.2d at 542 ("A single instance of interstate use, when the accompanying circumstances indicate an intent to continue the use, has been held sufficient to justify registration of a trade-mark."). Timex has satisfactorily registered and made use of the STEALTH trademark for watches, and we find no proof of any fraud involved in this process.

■ Section 1115(b)(8) provides a defense if "equitable principles, including laches, estoppel, and acquiescence, are applicable." While Leo Stoller was expelled from Stealth Industries for much of the time during which Timex was acquiring its rights in the use of STEALTH, we find no equitable reason to permit Leo Stoller to now contest Timex's rights in STEALTH. Leo Stoller admits that he was aware that Timex had filed an application for registration of STEALTH in 1989. Despite this knowledge, neither Leo Stoller nor S Industries opposed the application. While Leo Stoller asserts that he first learned in 1995 that Timex had successfully gained a registration for the mark STEALTH, we find this alleged late revelation insignificant. Leo Stoller was fully aware that Timex had applied for such registration, and the fact that Timex was eventually successful in gaining it should come as no surprise.

Having found that defendants have failed to establish a genuine issue of material fact regarding any defense to Timex's claim of trademark infringement, we therefore find that Timex is entitled to summary judgment on its claim of trademark infringement. Timex is also entitled to an injunction prohibiting defendants from making any further use of the STEALTH trademark on or in connection with watches, clocks, other timekeeping products or associated products. Timex shall be entitled to damages of an amount yet to be determined.

■ Timex further seeks a determination that it is entitled to treble damages and an award of its reasonable attorneys' fees for defendants' infringement. Pursuant to 15 U.S.C. § 1117(b),

> the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114(1)(a) of this title ... that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services.

We find that defendant Stealth Industries has intentionally used the mark STEALTH on watches after having agreed not to do so in a settlement agreement in 1992 with Timex. We further find that Stealth Industries made such use "knowing such mark ... is a counterfeit mark." Timex is therefore entitled to treble damages and reasonable attorneys' fees from defendant Stealth Industries.

■ Defendants Leo Stoller and § Industries have likewise admitted that they intentionally used the mark STEALTH on watches after Timex had been granted a registration. Furthermore, they admit that they became aware of Timex's registration for STEALTH in 1995, and have continued to use the trademark STEALTH on watches since that time.[6] While defendants were litigating the validity of Timex's rights to STEALTH during this time, we do not believe that such litigation should exempt defendants from section 1117(b) liability. We therefore find that defendants shall be liable for treble damages and attorneys' fees.

## 2. False Representation as to Source or Origin

■ The Lanham Act provides that:

Any person who, on or in connection with any goods . . . uses in commerce any word, term, name, . . . or any false designation of origin . . . which . . . is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damages by such act.

15 U.S.C. § 1125(a)(1).

In support of its motion for summary judgment on this count, plaintiff presents proof that defendants have sold their STEALTH watches to many of the same companies that purchase Timex's STEALTH products. These overlapping customers include K–Mart, Wal–Mart, Venture, and Ames. In addition to the fact that both Timex and defendants sell their STEALTH watches to several of the same vendors, defendant Leo Stoller has filed a "Verified Petition to Cancel" with the PTO in which he admits the likely confusion that has and will result from both Ti-

mex's and defendants' use of the mark STEALTH on watches. In paragraph 7 of that petition, Leo Stoller writes:

The use of the trademark STEALTH is likely to cause confusion or mistake in the minds of the public, to deceive the public or to lead the public and prospective purchasers to believe that the goods provided under the STEALTH are in some way backed by, sponsored by, franchised by. [sic] associated with, or otherwise connected with the good name and reputation of [Sentra Sporting Goods], resulting in damage and injury to the purchasing public, and damage and injury to [Sentra Sporting Goods].

In light of this evidence and Timex's proof of trademark infringement, we find that Timex is entitled to summary judgment on Count II of its complaint. *See Nabisco Brands v. Kaye,* 760 F.Supp. 25, 29 (D.Conn.1991) (finding that the evidence which establishes infringement of plaintiff's registered mark also establishes a violation of § 43(a) of the Lanham Act).

## 3. Connecticut Unfair Trade Practices Act

■ Timex also alleges that defendants have violated the Connecticut Unfair Trade Practices Act ("CUTPA"). Conn. Gen.Stat. § 42–110a, *et seq.* It is not necessary to perform a full CUTPA analysis, as defendants' violation of the Lanham Act alone establishes liability under CUTPA. *See Nabisco Brands,* 760 F.Supp. at 29; *Manufacturers Technologies, Inc. v. Cams, Inc.,* 706 F.Supp. 984, 1004–05 (D.Conn.1989); *Dial Corp. v. Manghnani Investment Corp.,* 659 F.Supp. 1230, 1239 (D.Conn.1987).

Timex argues that we should further award punitive damages and attorneys fees under CUTPA. Section 42–110g(a) provides that a court "may, in its discretion award punitive damage." Section 42–110g(d) permits us to award costs and reasonable attorneys' fees. As we have already found that

---

6. Since we find these defendants have intentionally and knowingly infringed on Timex's trademark since at least 1995, we need not resolve the factual issue of when these defendants first became aware of Timex's registration of STEALTH. We note, however, that "[w]illful blindness [of trademark registration] is knowledge enough"

for purposes of Section 1117(b). *See Levi Strauss & Co. v. Diaz,* 778 F.Supp. 1206, 1208 (S.D.Fla. 1991). All defendants admit their awareness of Timex's application for registration in 1989, and their subsequent alleged ignorance of Timex's success in gaining such registration may well be such willful blindness.

defendants are liable for attorneys' fees for its trademark infringement, pursuant to 15 U.S.C. § 1117(b), we need not award to plaintiff attorneys' fees under CUTPA. In addition, we are not now capable of determining proper punitive damages. While punitive damages might be appropriate, Timex's recovery of treble damages may well eliminate the need for an award of additional punitive damages under CUTPA. We reserve decision on this issue pending a determination of actual damages.

### 4. Timex's Other Claims

Timex also seeks summary judgment on its claims for common law unfair competition, common law trademark infringement, tortious interference with contract, breach of contract, breach of implied covenant of good faith and fair dealing, and common law fraud. We do not address these claims, as we find that any possible recovery under such claims would not exceed Timex's permissible recovery under the Lanham Act and CUTPA.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (Document # 30) is GRANTED and defendants' motion (Document # 39) is DENIED. Defendants are hereby enjoined from making any further use of the trademark STEALTH (or any other term or symbol confusingly similar to the STEALTH trademark) in connection with the manufacture, labeling, promotion, advertising, sale, or offering for sale of watches, clocks, other horological instruments and accessories thereto.

SO ORDERED.