**NABISCO BRANDS, INC.**

v.

**Arnold KAYE and Arnie's Deli, Ltd. d/b/a International Deli.**

**No. B–90–111 (WWE).**

United States District Court, D. Connecticut.

March 18, 1991.

Edward R. Scofield, Jacob D. Zeldes, Zeldes, Needle & Cooper, a Professional Corp., Bridgeport, Conn., William M. Hart, Alfred T. Lee, Steven H. Hartman, Milgrim Thomajan & Lee, New York City, for plaintiff.

Joseph F. McKeon, Jr., Christopher K. Pfirrman, Joseph F. McKeon, Jr., P.C., Westport, Conn., for defendants.

Arnold Kaye, Westport, Conn., pro se.

## RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

EGINTON, District Judge.

## BACKGROUND

Plaintiff, Nabisco Brands, Inc. ("Nabisco") commenced this action against defendants Arnold Kaye and Arnie's Deli, Ltd. (collectively "Kaye") claiming that defendants' use of the mark "A.2." constitutes trademark infringement in violation of 15 U.S.C. § 1114. In addition, plaintiff claims that the use of the "A.2." mark tends to falsely describe defendants' product as being the product of Nabisco or legitimately connected with it or its "A.1." product through approval, sponsorship or common origin, all in violation of 15 U.S.C. § 1125(a). Plaintiff also claims that the use of this mark constitutes unfair competition and trademark infringement under the laws of the state of Connecticut; that such use violates sections 42–110a et seq. of the Connecticut General Statutes, the Connecticut Unfair Trade Practices Act ("CUTPA") and; that such use dilutes and threatens to dilute its distinctive and famous "A.1." mark in violation of Conn.Gen.Stat. § 35–11A *et seq.*

Plaintiff has moved for summary judgment on all five counts of its complaint, claiming that there exist no genuine issues of material fact and therefore it is entitled to judgment as a matter of law. Defendants oppose plaintiff's motion, claiming that the existence of consumer confusion is a question of fact rendering summary judgment inappropriate.

For the reasons set forth below, plaintiff's motion for summary judgment will be granted.

## DISCUSSION

The issue in this trademark infringement case is whether, on the record of undisputed facts construed in the light most favorable to the non-movant, the use by defendants of the mark "A.2." presents the likelihood that consumers will be confused as to the source of defendants' product or the relationship between defendants and plaintiff. *Lois Sportswear, USA, Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 870–71 (2d Cir.1986).

## A. LIKELIHOOD OF CONFUSION

The issue of likelihood of confusion is decided by the application of the bal-

ancing test set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). The factors to be weighed include the strength of plaintiff's mark, the degree of similarity of the parties' marks, the proximity of the products, bridging the gap between the parties' products, actual confusion, the defendants' good faith in adopting the mark, the quality of defendants' goods and the sophistication of typical consumers of the product. *Id.*

### 1. *The Strength of Plaintiff's Mark*

█ Basic to an assessment of the strength of Nabisco's "A.1." mark is "the rule that registered marks are presumed to be distinctive and should be afforded the utmost protection." *Lois Sportswear*, 799 F.2d at 871. This rule, in conjunction with the fact that plaintiff's mark is registered and incontestable and defendant's own admission that the "A.1." mark is the best known mark for steak sauce in the United States, requires a conclusion by this Court that the "A.1." mark has enormous strength and is entitled to the most protection the Lanham Act can provide.

### 2. *The Degree of Similarity of the Parties' Marks*

The marks of both parties in this case consist of the capital letter "A" followed by a period followed by the numeral "1" or "2" respectively, also followed by a period. The only difference between the marks— the difference between the numerals "1" and "2"—is of no consequence in determining the confusing similarity between them or, ultimately, whether the mark "A.2." infringes "A.1." *See American Optical Corp. v. Siemens Aktiengesellschaft*, 213 U.S.P.Q. 510 (T.T.A.B.1982); *Clorox Co. v. State Chemical Manufacturing Co.*, 197 U.S.P.Q. 840 (T.T.A.B.1977) (FORMULA 999 likely to be confused with FORMULA 409). This is particularly true where, as here, defendant admits that the "A.2." mark was designed to capture the customer's attention by drawing upon the market recognition of the well known "A.1." trademark. While there are clearly some differ-

ences in the presentation of the marks, it is beyond dispute that consumers would be "reasonably justified in believing both products come from the same [source]." *Harlequin Enterprises v. Gulf & Western Corp.*, 644 F.2d 946, 949 (2d Cir.1981). Indeed, the use of the numeral "2" as opposed to the numeral "1" rather than differentiate the product, in fact, increases the likelihood that consumers will believe that the defendant's product is simply a variation on the basic "A.1." sauce or a line extension which emanates from, or is authorized by or otherwise affiliated with the same source as the "A.1." product.

### 3. *The Proximity of the Products*

Both products are sauces used to enhance the flavor of meats. In addition, according to Stew Leonard's, the retailer that has sold both the "A.1." and "A.2." products, both items are displayed in the identical shelf location in the retail store. In these circumstances, and in view of the similarity of the marks, the likelihood of confusion is high. *See RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1061 (2d Cir.1979) (the fact that the food products in issue are offered through similar channels of trade, such as supermarkets, supports finding of likely confusion); *see also The Time, Inc. Magazine Company v. Globe Communications Corp.*, 10 U.S.P.Q.2d 1915, 1921 (S.D.N.Y.1989).

### 4. *Bridging the Gap Between the Parties' Products*

"Bridging the gap" is not at issue in this case, given that defendants' product is identical in nature to plaintiff's product. Although defendants argue that the taste of their product is different, this difference is irrelevant to the confusion inquiry since a consumer led to purchase the product believing it to be a different version of plaintiff's steak sauce will not know the taste of the product until after the purchase. Defendants also argue that their sauce is used for poultry as well as steak and therefore is different from plaintiff's product. This argument is equally unavailing. Under prevailing law Nabisco would

be entitled, as a matter of law, to prevent consumer confusion resulting from imitative uses of its trademark even were the products at issue not as similar as they are here. *See, e.g., Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d 812, 818 (1st Cir.1987) (affirming grant of summary judgment of trademark infringement where parties provided similar but not identical goods and services, holding that such similarity of the parties' respective goods and services gave rise to a "strong likelihood of confusion"). *See also Scarves by Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167, 1174 (2d Cir.1976) (Scarf designer has right to prevent use of her trademark on cosmetics even without proof that she presently intends to enter cosmetic market).

### 5. *Actual Confusion*

The law provides that it is unnecessary for plaintiff to show evidence of actual confusion, recognizing that such evidence is exceedingly rare. *Harold Ritchie, Inc. v. Chesebrough–Pond's Inc.,* 281 F.2d 755, 761 (2d Cir.1960). In *Ritchie* the court noted that actual confusion or deception of purchasers is not essential to a finding of trademark infringement or unfair competition, it being recognized that reliable evidence of actual instances of confusion is practically almost impossible to secure. *See also Lois Sportswear, supra,* 799 F.2d at 875 (although plaintiff had no proof of actual confusion, summary judgment was appropriate since it "would be unfair to penalize [the trademark owner] for acting to protect its trademark rights before serious damage has occurred"). This is particularly true in a case such as this where, by defendants own admission, the "A.2." product has not yet achieved a mass market and its sales have been largely confined to defendants' deli/restaurant.

Nor is it necessary, contrary to defendants' assertion, for plaintiff to present evidence, in the form of a consumer survey, to establish a likelihood of confusion. Indeed, the Second Circuit has found such evidence to be unnecessary to establish infringement, even on a summary judgment motion, particularly in cases such as this, where sales of the allegedly infringing

product "have been minimal ... and there has been little chance for actual confusion as yet." *Lois Sportswear,* 799 F.2d at 875. Despite this fact, the Court notes the letter from a consumer to Nabisco trying to find out how she could purchase Nabisco's new product, the "A.2." sauce, in Florida, having purchased it previously on a trip to Connecticut. Such evidence is certainly illustrative of the type of confusion which Nabisco seeks to avoid.

### 6. *Defendants' Good Faith In Adopting The Mark*

It is not required, for purposes of finding likelihood of confusion, that defendants acted with deceptive purpose. *Lois Sportswear, supra,* 799 F.2d at 875. However, where deliberate copying is shown, a strong presumption of likelihood of confusion arises. *Harlequin Enterprises, supra,* 644 F.2d at 949. In light of defendants' admissions regarding the reasons for adopting the "A.2." mark, Nabisco is clearly entitled to the benefit of such a presumption. Defendants' claim that the "A.2." mark was intended as a pun on "A.1.", does not lead to a different conclusion. Such use of another's mark does not prevent a finding of infringement. *See, e.g., Crazie Eddie v. Lois Pitts Gershon, Inc.,* 600 F.Supp. 537, 541–42 (S.D.N.Y. 1984); *Gucci Shops, Inc. v. R.H. Macy's Co.,* 446 F.Supp. 888 (S.D.N.Y.1977).

### 7. *The Quality of Defendants' Goods*

"[T]he actual quality of [defendants'] goods is irrelevant; it is the control of quality that [plaintiff] is entitled to maintain". *El Greco Leather Products Co. v. Shoe World, Inc.,* 806 F.2d 392, 395 (2d Cir.1986). Absent such control, Nabisco's reputation and the consumer goodwill vested in the "A.1." mark stands to be jeopardized. The likelihood of such consequences supports a finding of trademark infringement. *See Omega Importing Corp. v. Petri–Kine Camera Co.,* 451 F.2d 1190, 1195 (2d Cir.1971). Even if defendants' product proves to be of consistently good quality, "[t]he fact that [defendants] have produced a quality copy suggests that the possibility

of their profiting from [plaintiff's] goodwill is still likely." *Lois Sportswear, supra,* 799 F.2d at 875.

8. *The Sophistication of Typical Consumers*

The final factor in this analysis, the sophistication of the typical consumer of the product, also weighs in plaintiff's favor. Purchasers of inexpensive steak sauce products are members of the general public, not trade experts. *See Specialty Brands v. Coffee Bean Distributors, Inc.,* 748 F.2d 669, 672 (Fed.Cir.1984). Purchasers of relatively inexpensive comestibles sold in supermarkets and grocery stores have been held to exercise a lesser standard of purchasing care. In such a case, the possibility of confusion is even more likely than where the purchase results from care and deliberation. *Commerce Foods, Inc. v. PLC Commerce Corp.,* 504 F.Supp. 190, 196 (S.D.N.Y.1980).

Based on an examination of the *Polaroid* factors, the Court concludes that the likelihood of confusion in this case is extremely high. Thus, plaintiff is entitled to summary judgment on count one of the complaint alleging trademark infringement in violation of 15 U.S.C. § 1114. Further, the evidence which establishes infringement of plaintiff's registered mark also establishes a violation of § 43(a) of the Lanham Act as alleged in count two of the complaint. *The Dial Corporation v. Manghnani Investment Corp.,* 659 F.Supp. 1230, 1236–37 (D.Conn.1987). The same evidence additionally establishes trademark infringement under Connecticut common law (count three), violation of the Connecticut Unfair Trade Practices Act ("CUTPA") (count four) and violation of the anti-dilution statute, Conn.Gen.Stat. § 35–11(i)(c). *Id.* at 1239 (count five). Accordingly, summary judgment is also appropriate on Nabisco's second, third, fourth and fifth claims.

**B. DAMAGES**

■ Once a finding of trademark infringement has occurred, the Court must consider the question of damages. 15 U.S.C. § 1117 provides that plaintiff is entitled to recover defendants' profits, any damages sustained by the plaintiff and the costs of the action. The Court may assess up to three times the actual damages and in exceptional cases, award attorney's fees to the prevailing party.

After review of all the circumstances of this case, the Court finds that defendants must disgorge the profits made from the sale of the "A.2." sauce and reimburse plaintiff for the costs of this action, including reasonable attorney's fees. *See, e.g., Reebok International Ltd. v. Su Youn Pak,* 1990 WL 91644, 1990 U.S.Dist. LEXIS 7926 (S.D.N.Y. June 28, 1990); *Grey v. Campbell Soup Co.,* 650 F.Supp. 1166, 1176 (C.D.Cal.), *aff'd without op.,* 830 F.2d 197 (9th Cir.1986).

### CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is GRANTED. The amount of damages will be calculated by the Court upon submission of a statement of profits by defendants and a statement of costs and fees by plaintiff. These submissions are to be made within 21 days from receipt of this ruling. Additionally, defendants are permanently enjoined from further use of the mark "A.2." and are ordered to recall and destroy all products and advertising, sales and promotional material bearing the mark "A.2.". Defendants shall file, within 21 days from receipt of this order, a written, sworn statement attesting to their compliance with the foregoing obligations. SO ORDERED.