

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-25-2007

# Buschmeier v. G&G Inv Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4839

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Buschmeier v. G&G Inv Inc" (2007). *2007 Decisions.* Paper 1742.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1742

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4839

PETRA BUSCHMEIER

v.

G&G INVESTMENTS, INC.

*Buchanan Ingersoll PC,

Appellant

* Pursuant to F.R.A.P. 12(a)

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court Case Nos. 03-mc-00506 & 02-cv-00610)
District Judge: The Honorable Terrence F. McVerry

Argued October 26, 2006

Before: SMITH, FISHER, and NYGAARD, *Circuit Judges*

(Filed: January 25, 2007)

John R. Leathers, Esq. (argued)
Gregory J. Krock, Esq.
Stanley J. Parker, Esq.
Buchanan Ingersoll PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
        *Counsel for Appellant*

Arnd N. von Waldow, Esq.
Timothy J. Cornetti, Esq. (argued)
Reed Smith LLP
435 Sixth Ave.
Pittsburgh, PA 15219
        *Counsel for Appellee*

---

OPINION

---

SMITH, *Circuit Judge*.

## I.

Buchanan Ingersoll PC appeals the District Court's denial of its request to be paid legal fees from an available asset that would otherwise be used to partially satisfy a judgment against G&G Investments, Inc. (G&G Investments) and to withdraw as counsel for G&G Investments because the District Court enjoined G&G Investments from paying Buchanan Ingersoll.

The two issues raised on appeal are: 1) Whether the District Court erred in holding that counsel for a judgment debtor should not be paid for legal services provided in post-judgment execution proceedings if the judgment has not been satisfied because counsel

2

purportedly attempted to frustrate collection efforts; and 2) Whether the District Court erred in denying counsel's request to withdraw after it enjoined counsel's client from paying counsel for services rendered in post-judgment execution proceedings.

We review the District Court's denial of fees for abuse of discretion and find no such abuse. We will affirm the District Court's decision on this point. Because the District Court did not consider the interests of Buchanan Ingersoll in its withdrawal calculation, we will reverse the District Court's decision on this point.

## II.

The facts of this case are straightforward. On July 14, 2003, the District Court entered a Final Judgment in favor of Appellee Petra Buschmeier and against G&G Investments in the amount of over $57 million, plus interests and costs. The judgment arose out of a December 2001 Arbitration Award of the International Chamber of Commerce, which Buschmeier successfully confirmed in District Court when she obtained the Final Judgment. The judgment has remained unsatisfied.

Buschmeier has since attempted to obtain payment on its judgment by seeking discovery in aid of execution. Buschmeier served her First Set of Interrogatories and Requests for Production in Aid of Execution of Judgment in July 2003. G&G Investments served its Answers and Objections on August 25, 2003. On September 8, 2003, Buschmeier filed a Motion for Supplementary Relief in Aid of Execution that requested the District Court to, inter alia, enjoin G&G Investments from disposing of any

of its assets. On November 18, 2003, the District Court issued a Memorandum Order of Court (hereinafter "Injunction Order") enjoining G&G Investments from making payments to any entities, including its counsel Buchanan Ingersoll, until the July 14, 2003 Final Judgment Order was fully satisfied.

One week later, G&G Investments filed a motion for partial relief from the Injunction Order so that it could be allowed to settle a claim in a Canadian bankruptcy proceeding. G&G Investments in the same motion also requested District Court permission to pay Buchanan Ingersoll for services rendered in settling the bankruptcy proceeding and for all outstanding legal fees. In a November 26, 2003 order, the District Court held that G&G Investments could settle the bankruptcy claim but denied the requested permission to pay Buchanan Ingersoll without the District Court having more information. G&G Investments then filed a Fee Petition on January 16, 2004, describing the legal services it received. G&G Investments' Fee Petition asked the District Court for permission to pay Buchanan Ingersoll for services provided in the Canadian bankruptcy proceeding and the Buschmeier execution proceedings. Buschmeier opposed the Fee Petition, and in G&G Investment's Reply and Supplement in Support of Fee Petition, G&G Investments sought further permission to pay Buchanan Ingersoll not only all outstanding fees, but also a $25,000 retainer for future services that would be rendered in the Buschmeier execution proceedings.

The District Court granted the Fee Petition in part and denied it in part. The Court permitted G&G Investments to pay Buchanan Ingersoll fees related to the Canadian

4

bankruptcy proceeding, but prohibited G&G Investments from paying its counsel for any other services. Buchanan Ingersoll then filed a Motion to Withdraw and a Motion for Reconsideration. On August 3, 2004, the District Court denied Buchanan Ingersoll's request to withdraw "pending an appearance of replacement counsel on behalf of" G&G Investments. On October 6, 2005, the District Court also denied the Motion for Reconsideration. The District Court ordered G&G Investments to transfer the funds from the Canadian bankruptcy settlement to Buschmeier. Buchanan Ingersoll timely appealed both the denial of the Motion to Withdraw and the denial of the Motion for Reconsideration. After Buchanan Ingersoll filed its notice of appeal, G&G Investments received $93,363.27 CND from the Canadian bankruptcy settlement. Buchanan Ingersoll then filed a motion again seeking payment of counsel fees or, in the alternative, placing this newfound money in escrow pending the resolution of the present appeal. It appears from the record that the District Court granted this motion in part on April 13, 2006 and ordered G&G Investments to place the funds in escrow with the District Court.

Buchanan Ingersoll now appeals both the denial of the Motion to Withdraw and the denial of the Motion for Reconsideration.[1]

### III.

We review a district court's denial of a request by counsel to withdraw from

---

[1]The District Court had jurisdiction pursuant to 9 U.S.C. § 203. We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and the collateral order doctrine.

representation for abuse of discretion.  *Ohntup v. Firearms Ctr., Inc.*, 802 F.2d 676, 679

(3d Cir. 1986) (per curiam).[2]  An abuse of discretion occurs when a district court's

decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an

improper application of law to fact.  *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852

(3d Cir. 2006) (citation omitted).

As a general rule, if a corporation is to be represented in court, this representation

must be made through counsel.  *See Rowland v. California Men's Colony*, 506 U.S. 194,

201-02 (1993) ("It has been the law for the better part of two centuries ... that a

corporation may appear in the federal courts only through licensed counsel."); *Simbraw,*

*Inc. v. United States*, 367 F.2d 373 (3d Cir. 1966).  The District Court cited this rule in its

denial of Buchanan Ingersoll's motion to withdraw, and stated that the motion would be

reconsidered pending an appearance of replacement counsel.  While this general rule

correctly states Pennsylvania law, other factors may permit counsel to withdraw from

representation of a corporation.  Courts, often in unpublished opinions, will permit

---

[2]We also review a district court's denial of a request for payment of attorneys' fees for abuse of discretion.  *Pierce v. Underwood*, 487 U.S. 552, 559 (1988); *Morgan v. Perry*, 142 F.3d 670, 682-83 (3d Cir. 1998).  The District Court in this case granted the portion of Buchanan Ingersoll's fee petition which represented legal services and costs which were directly related to the Canadian bankruptcy settlement, but denied the fee petition with respect to any legal services and costs not related to this settlement.  The chances of G&G Investments collecting anything close to its unsatisfied judgment appear slim.  The District Court weighed this unlikelihood in its decision.  Buchanan Ingersoll could point to no sufficiently analogous case law, and we have found none either, that would lead us to conclude that the District Court erred in its decision.  In light of the fact that case law from this Court provides little guidance to the district courts on this issue, we do not find an abuse of discretion.

withdrawal and then inform the corporation that it cannot go forward without retaining

new counsel.[3]  With respect to when counsel should be permitted to withdraw when the

client is a corporation, our decision in *Ohntrup v. Firearms Ctr., Inc.*, 802 F.2d 676 (3d

Cir. 1986) (per curiam), provides guidance.

In *Ohntrup*, after concluding that the District Court did not abuse its discretion in

refusing to permit the firm of Morgan Lewis to withdraw, this Court stated that there is

some play in the joints for the requirement that corporations must be represented by

counsel:

> One final matter requires this court's attention.  As noted above, the
> transcript of the district court's oral opinion indicates that Morgan would be
> required to continue to represent Makina until such time as Makina

---

[3]*See, e.g.*, *Dianese, Inc. v. Pennsylvania*, No. CIV.A. 01-2520, 2002 WL 1340316, at *2 (E.D. Pa. June 19, 2002) (permitting withdrawal even though plaintiff corporation would go unrepresented but still refusing to allow corporation to have representation in court without counsel); *Quality Trust, Inc. v. Cajun Contractors, Inc.*, No. 04-4157-SAC, 2006 WL 1914164, at *1 (D. Kan. June 27, 2006) (quoting a prior court order where counsel had been permitted to withdraw and corporation was told to obtain new counsel); *Grass Lake All Seasons Resort, Inc. v. United States*, No. 01-74386, 2005 WL 3447869, at *2 (E.D. Mich. Dec. 15, 2005) (discussing how the Court had previously granted counsel for plaintiff corporation's request to withdraw without first requiring substitute counsel)*; Carrico v. Village of Sugar Mountain*, 114 F. Supp. 2d 422, 424 (W.D.N.C. 2000) (dismissing corporate plaintiff's claims after, in a previous ruling allowing plaintiff's counsel to withdraw); *Consol. Cigar Corp. v. Monte Cristi de Tabacos*, 58 F. Supp. 2d 188, 191 (S.D.N.Y. 1999) (granting default judgment against defendant corporation after the corporation had failed to retain new counsel after previous counsel was allowed to withdraw); *Fed. Ins. Co. v. Yusen Air & Sea Servs.*, No. 97CIV3830HBTHK, 2001 WL 498412, at *3 (S.D.N.Y. May 9, 2001) (permitting withdrawal even though no substitute counsel had been retained); *R. Maganlal & Co. v. M.G. Chem. Co., Inc.,* No. 88 CIV. 4896MJLTHK, 1996 WL 420234, at *3 (S.D.N.Y. July 25, 1996) (permitting withdrawal and notifying defendant corporation that "failure to retain new counsel may result in the entry of a default").

> arranged for representation by other counsel. We do not believe that such a result automatically follows in all cases from the language of the rule of court. Otherwise, a lawyer in the present situation might be unable to withdraw at any time. Such a result is neither mandated nor required for the effective administration of the judicial system.

*Id*. at 679-80. Because the Court in *Ohntrup* denied the law firm's request to withdraw, it did not directly confront the question presented in this case–whether granting a leave to withdraw would "violate the prohibition against corporations appearing in court unrepresented by counsel." *Id*. at 680 n.1. Still, *Ohntrup* instructs us that, in certain circumstances, counsel for a corporation should be permitted to withdraw even before a corporation finds a suitable substitute.

*Ohntrup* states that a law firm can withdraw from representing a corporation even before the corporation retains new counsel when the withdrawing firm "serves no meaningful purpose." *Id*. at 680.

In analyzing the phrase "no meaningful purpose," we are persuaded by the logic of both *Ohntrup* and *Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.*, 310 F.3d 537 (7th Cir. 2002). In *Fidelity*, the Seventh Circuit held that the lower court's order denying counsel's motion to withdraw was an abuse of discretion even though withdrawal would leave the corporation without counsel. In coming to this decision, the Court looked at the burden imposed on the potentially withdrawing counsel if the status quo is maintained, the stage of the proceedings, and prejudice to other parties. *See id*. at 540-41. The three-part test from *Fidelity* explicitly states the factors that were implicit in *Ohntrup*. The latter two factors, litigation stage and third party prejudice, were

8

present in this Court's analysis in *Ohntrup*. The first factor, which looks at the burden on counsel if withdrawal is denied, is already part of Pennsylvania's ordinary withdrawal calculation. *See* PA. R. PROF'L CONDUCT 1.16(b)(5) and (6).

*Fidelity* is instructive and persuasive. When read together with *Ohntrup*, the proper withdrawal calculus for a district court to perform when the client is a corporation looks at the burden imposed on all parties and the counsel attempting to withdraw. A law firm is entitled to withdraw once the firm demonstrates that the ordinary rules of withdrawal have been met and its appearance serves no meaningful purpose. Whether or not a law firm's appearance serves no meaningful purpose will be based on potential prejudice to all litigating parties. One factor to consider in any prejudice analysis is the stage of litigation.

Applying *Ohntrup* in this manner, it appears that the District Court abused its discretion by refusing to permit Buchanan Ingersoll to withdraw. Buchanan Ingersoll has clearly followed the ordinary rules of withdrawal. Rule 1.16(b)(5) permits withdrawal when the client fails to pay, so long as counsel provides reasonable warning. Rule 1.16(b)(6) permits withdrawal when representation will result in an unreasonable financial burden. According to Buchanan Ingersoll, it has incurred more than $100,000 in unpaid fees and expenses since it has been required to represent G&G Investments without payment. Of course, this number will only increase if the District Court's decision stands.

The "stage of the litigation" factor also favors withdrawal. Notably, the Court in

*Ohntrup* decided that counsel could not withdraw even though the case, as in the present matter, was in the post-judgment stage. *See Ohntrup*, 802 F.2d at 679. The difference between *Ohntrup* and the present matter is that the corporation in *Ohntrup* was located in Turkey, did no business in the United States, and was composed of officers and agents who spoke no English. *Id.* Counsel was needed so that the court would not be left "without the possibility of effective communication with [the corporation], as well as without a reliable mechanism for responsible supervision of the post-judgment aspects of this litigation." *Id.* By contrast, this case is in the execution stage and G&G Investments is not a foreign corporation.

Finally, the lack of comparable potential prejudice to either G&G Investments or Buschmeier favors withdrawal by Buchanan Ingersoll. Both the District Court's denial of Buchanan Ingersoll's Motion for Reconsideration and Buschmeier's brief are internally contradictory on this point. On one hand, the District Court's denial of the Motion for Reconsideration implies that Buchanan Ingersoll aided in G&G Investments' "continuing legal maneuvers to avoid payment and satisfaction of Plaintiff's legitimate judgment." Buschmeier argues that the litigation which has occurred thus far has been a result of the continuous efforts of G&G Investments, through its counsel, to thwart collection. On the other hand, Buschmeier then argues that Buchanan Ingersoll is necessary in the execution stage to aid G&G Investments' cooperation with the District Court. In the view of the District Court and Buschmeier, Buchanan Ingersoll is both obstructing collection of the judgment and is absolutely necessary to the judgment's execution. If Buchanan Ingersoll

is impeding collection, then it is difficult to see how Buschmeier would be prejudiced by withdrawal.

In light of this calculus, Buchanan Ingersoll is entitled to withdraw.

IV.

For these reasons, we will *affirm* the District Court's denial of Buchanan Ingersoll's Fee Petition and *reverse* the District Court with respect to withdrawal.

*Buschmeier v. G&G Investments*, No. 05-4839

NYGAARD, <u>Circuit Judge</u>, *Concurring in Part and Dissenting in Part.*

This appeal is really all about money. Had Buchanan Ingersoll gotten paid the fees it wanted, it would have no desire to withdraw from the case. Indeed, its Petition for Reconsideration argued in the alternative – either grant our fee petition, or let us out. Lamentably, however, for all-too-many the practice of law has become much less a profession carried on for service to others, and much more a craft carried on unabashedly for remuneration. Courts, however, are not in the business of protecting or collecting fees on behalf of attorneys. Courts have a wider perspective and broader concerns. Attorneys are to be officers of the court, representing parties of course, but not free to simply abandon their obligation to either or both, because they have not been paid as much as they think they deserve. Indeed, our decision in *Ohntrup v. Firearms Center, Inc.* makes clear that attorneys, as officers of the court, cannot simply fade away unless and until they can demonstrate to the satisfaction of the court that they no longer serve some "meaningful purpose." 802 F.2d 676, 679 (3rd Cir. 1986). Although it is certainly desirable that attorneys be fully compensated, it does not follow that they always will be. Hence, I will join the majority's determination, as set forth in footnote 2 of its opinion, that the District Court did not err in its fee award order. In my view, there is ample record evidence to support the District Court's conclusions that Buchanan Ingersoll was seeking compensation for items not related to securing the proceeds of the Canadian

bankruptcy (for which the court had approved compensation).[4]

However, I do not agree with the majority's holding that the District Court abused its discretion by refusing to let Buchanan Ingersoll withdraw as counsel for G&G Investments. In my view, decisions such as this exemplify the wide discretion we give district judges to allow them sufficient latitude to keep their cases moving, prevent delays and prejudice to the parties, and to efficiently manage their dockets.[5] I would not interfere here either, but would instead defer to the district court judge who is intimately familiar with the goings-on in this case.

To me, the law is crystal clear: in federal courts, a corporation must be represented by counsel. *See* 28 U.S.C. § 1654. This requirement cannot be waived. *See also* Fed. Cir. R. 47.3(a). *See also Rowland v. California Men's Colony*, 506 U.S. 194, 202, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) ("a corporation may appear in the federal courts only through licensed counsel"); *United States v. Cocivera*, 104 F.3d 566 (3d Cir. 1996); *WRS, Inc. v. Plaza Entm't, Inc*., 402 F.3d 424, 426 (3d Cir. 2005).

The majority concludes that by applying our decision in *Ohntrup, supra*, "in this manner, it appears that the District Court abused its discretion by refusing to allow Buchanan Ingersoll to withdraw." (Maj. Op. at line 200-201). I find this conclusion

---

[4]The record indicates that G&G has already paid Buchanan Ingersoll $279,515.05, belying its dramatic Thirteenth Amendment assertion that the District Court's orders would impose "involuntary servitude" upon them. (Appt's Brief at p. 14).

[5]Indeed, Buchanan Ingersoll admits that its withdrawal may result in some prejudice to appellee, but argues that it would be "nominal." (Appellant's. Brief at p.25).

problematic for two reasons.

First of all, as we explained in *Ohntrup, supra,* the grant or denial of an attorney's motion to withdraw in a civil case is a matter left to the discretion of the trial court. We must pay more than lip service to this standard of review. Under this standard, "[w]e will not disturb the District Court's exercise of discretion absent a 'definite and firm conviction that the court below committed a clear error of judgment.'" *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 127 (3d Cir. 1993) quoting *Ferrero, U.S.A., Inc. v. Ozak Trading, Inc*., 952 F.2d 44, 48 (3d Cir. 1991). "Abuse" is a serious term, and implies a significant misjudgment. It matters not that we would decide differently. *See Washington v. Sherwin Real Estate, Inc.,* 694 F.2d 1081 (7th Cir. 1982) (citing *Moore v. Sunbeam Corp*., 459 F.2d 811, 829 (7th Cir. 1972)). Under the abuse of discretion standard of review, the relevant inquiry is not "how the reviewing judges would have ruled if they had been considering the case in the first place." *Beshear v. Weinzapfel*, 474 F.2d 127, 134 (7th Cir.1973). It is simply not enough that it "appears that the District Court abused its discretion." More is required than mere appearances. Rather, "an abuse of discretion is established only where no reasonable [person] could agree with the district court; if reasonable [persons] could differ as to the propriety of the court's action, no abuse of discretion has been shown." *Smith v. Widman Trucking & Excavating,* 627 F.2d 792, 795-96 (7th Cir. 1980). There is no misjudgment here at all, significant or otherwise, and I would hold that the District Court did not abuse its discretion by requiring Buchanan Ingersoll to remain as counsel for G&G until Buchanan Ingersoll

14

shows to the satisfaction of the court that it no longer serves a meaningful purpose in the case.

Second, I disagree with the manner in which the majority applies our decision in *Ohntrup*, particularly the majority's implication that the District Court was obliged to perform some calculus to discover what meaningful purpose Buchanan continues to serve. That application contravenes our holding in *Ohntrup*, which clearly places the burden of persuasion on the law firm. *See Ohntrup,* 802 F.2d at 679-80, ("a law firm is entitled to withdraw once *the firm* demonstrates *to the satisfaction of the district court* that its appearance serves no meaningful purpose, particularly insofar as an opposing interest is concerned.") (my emphasis). In my view it is not the District Court's job to rummage around in the case to see if Buchanan Ingersoll continues to serve a meaningful service, or to perform some withdrawal "calculus" when Buchanan Ingersoll had neither put forth an argument about, nor provided any evidence of any "meaningful purpose" it may be serving. Instead, appellant seems wholly unaware of the *Ohntrup* test and its prerequisite burden of persuasion on this issue. "Meaningful purpose" has broad implications, including the District Court's substantial interest in the administration of justice, in the efficient management of its schedule and docket, and the need to insure progress, not just in this case, but in all cases assigned to it.

Finally, the Pennsylvania Rules of Professional Conduct cited by the Majority do not somehow supply Buchanan Ingersoll with permission to withdraw whenever it suits them. The majority's assertion that Rules 1.16(b)(5) and 1.1.6(b)6) permit withdrawal is

15

simply wrong. Maj. Op. at 9. First, the Rules govern the behavior of lawyers – not the courts, federal or state. Second, the Rules do not permit withdrawal – they are actually limitations and circumscribe the conditions under which a lawyer may petition the court to withdraw. Third, and most significant, all conditions contained in Rule 1.16 (b), governing when an attorney may attempt to withdraw, are made expressly subject to an exception found in Rule 1.16 (c), which provides as follows:

> c) A lawyer must comply with applicable law requiring notice to *or permission of a tribunal* when terminating a representation. *When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for* terminating the representation. (my emphasis).

Thus, the Majority's premise that "Buchanan Ingersoll has clearly followed the ordinary rules of withdrawal" is just plain wrong and leads the opinion to a wrong conclusion. Indeed Rule 1.16 provides compelling authority for why we should *affirm* the District Court. Buchanan Ingersoll has been ordered to continue representing G&G. The District Court has properly exercised its discretion in so ordering. Instead it is Buchanan Ingersoll who is failing to follow the Pennsylvania Rules of Professional Conduct. Western District's Local Rule 83.2.2. (D) clearly states that a withdrawal of appearance shall only be permitted with leave of court. Once an attorney enters an appearance in a case, he or she can only be relieved of that responsibility with the court's permission – attorneys cannot simply back out when they are not getting paid as much as they want.

I think it is also worth noting that were we to affirm the District Court on this

issue, we would still remand the cause.[6]  The case is not over and when Buchanan

Ingersoll returns to the District Court it can still re-petition the court to withdraw, present

evidence to the District Court on the *Ohntrup* test, and attempt to carry its burden of

persuading the District Court that it no longer serves "a meaningful purpose."  Until then

it must obey the Order of the Court and the Rules of Professional Conduct and continue to

represent G&G.

I respectfully dissent and would affirm the District Court's orders in full.

---

[6]Appellate jurisdiction is based upon the collateral order exception to finality.